GENERAL ELECTRIC CO. v. HILL–WRIGHT ELECTRIC CO.

(Circuit Court of Appeals, Second Circuit. December 14, 1909.)

No. 91.

1. PATENTS (§ 328*)—PATENTABILITY—ELECTRIC BULBS—VACUUM PROCESS.
   Howell patent, No. 726,293, for an improvement in a process of exhausting air from incandescent electric lamp bulbs, *held* not invalid for lack of patentability.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. PATENTS (§ 328*)—INFRINGEMENT—ELECTRIC BULBS—VACUUM PROCESS.
   Howell patent, No. 726,293, for process of exhausting air from incandescent electric light bulbs, *held* infringed.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

3. PATENTS (§ 18*)—SIMPLE DEVICE.
   The fact that an invention is simple, and that at present it seems to have been obvious to the workers in the art, does not militate against its validity.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 18; Dec. Dig. § 18.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** PATENTS (§ 229*)—INFRINGEMENT—TRANSPOSITION OF STEPS.

In a suit for infringement of a patented process, defendant could not avoid infringement by merely transposing the steps of the process.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 366; Dec. Dig. § 229.*]

Noyes, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit by the General Electric Company against the Hill-Wright Electric Company. From a decree of the Circuit Court of the United States for the Southern District of New York, dismissing complainant's bill for infringement of letters patent No. 726,293, dated April 28, 1903, to John W. Howell complainant's assignor, for a new method of exhausting incandescent lamps (170 Fed. 189), complainant appeals. Reversed and remanded, with instructions.

The patent was held valid on demurrer in General Electric Company v. Campbell (C. C.) 137 Fed. 600.

Richard N. Dyer and John Robert Taylor, for appellant.

A. Parker-Smith, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The inventor states at the outset that his method is an improvement upon the well-known chemical processes of exhausting the bulb. These processes require the expenditure of considerable time in order to secure the desired perfection in the vacuum necessary to preserve the filament for any extended period. They introduced in the tube of the vacuum inclosure a chemical which will readily combine when heated with the remnant of gases which are released during the final incandescence of the filament.

In the ordinary way of using these processes the selected chemical is placed in the tubulature of the lamp and after the desired vacuum is obtained the tubulature is sealed below the chemical. The filament is then brought to intensive incandescence and the chemical heated to drive vapors in the bulb which by combination perfect the vacuum. The tube is then sealed above the chemical, the superfluous portion of the tube is removed and the lamp is ready for use. The specification asserts that this process was objectionable for the reason, among others, that the application of heat to the tube in the first sealing is apt to volatilize too much of the chemical, tending to discolor the bulb of the lamp. Again, it is impossible to seize the definite moment of best exhaustion with the old method of producing the first sealing off of the lamp. There was also more or less loss from collapse of the tubes, permitting air to enter the bulb. These objections the patentee remedies by his method which consists in employing a very thick and substantial rubber tubing which is slipped over the pipe leading to the pump and into the end of which the lamp tubulature is inserted after the chemical has been placed therein. This connection is closed at the right moment by a pinch-cock, thus maintaining the vacuum unim-

paired for a period long enough to effect the final exhaustion of the lamp by chemical means. After the connection to the pump is closed the lamp filament is brought to incandescence and after an almost complete vacuum is secured the tube is sealed off and the lamp is completed in the usual way.

"The essence of the invention therefore consists in closing the connection between the lamps and the pump without the use of heat, so that an excess of the chemical used to perfect the vacuum is not volatilized."

The claims involved are as follows:

"1. The process of exhausting incandescent lamp bulbs to form a high vacuum herein set out, which consists in connecting the tubulature containing a suitable chemical to the pumps, exhausting to the desired degree, then closing the pump connection below the chemical without the use of heat, then bringing the filament to incandescence and causing the chemical to react on the remnant gases, and then sealing the lamp between the chemical and the bulb.

"2. The method of exhausting lamp-bulbs to form a high vacuum, which consists in inserting a chemical exhausting agent in an extended open-ended tube leading from the bulb, exhausting the bulb through said tube to the desired degree by treatment on the pumps, closing the pump connection below the chemical without heating the tube, bringing the filament to incandescence, then heating the chemical to volatilize a small portion thereof and completing the exhaustion by its reaction on the remnant gases, and finally sealing the lamp between the chemical and bulb, as set forth."

The defenses relied on are lack of patentability and non-infringement.

Notwithstanding the formidable and, at times, well-nigh incomprehensible nomenclature of the electric lighting art, the invention is, in fact, an exceedingly simple one. It is not a fundamental invention, it did not revolutionize the art, but, by the substitution of an ordinary pinch-cock for heat in closing the connection between the lamp and the pump, it has accomplished a most useful and beneficial result with a corresponding economy of time, labor and material.

The patent purports to be, and is, an improvement upon the invention of Arturo Malignani for a process of evacuating incandescent lamps. This patent is sufficiently described in Malignani v. Germania Co. (C. C.) 169 Fed. 299, and need not be discussed here further than to say that the process of the patent in suit is Malignani's process with the substitution of the pinch-cock for the soldering of the lower end of the tube by heat.

The fact that the invention is simple and that at the present time it seems as if it might have been obvious to the workers in this art, does not militate against its validity. Many of the most useful inventions depend upon equally simple changes.

The important question is—what does the invention do?

Tested by results we think it quite clear that the patent discloses patentable novelty. The testimony shows that the Howell process saves time, material and the use of skilled labor. It makes better and cheaper lamps and more of them, avoids discoloration of the bulbs and permits an instantaneous and controllable closure. These are some, but not all, of the practical results obtained by using the patented method and we find nothing in the record which anticipates or limits

the claims. The defendant offered no oral testimony but introduced several patents and publications. An extract from a paper by Herman Sprengal on "Researches on the Vacuum" being the one upon which principal reliance is placed. The description and drawings, so far as we are able to understand them, show a complicated and awkward apparatus absolutely incapable of use in the art now under discussion. It avails nothing to prove that rubber tubes, pinch-cocks and exhaust pumps were old, unless it be shown that they were combined to produce the result of the Howell patent. We think nothing in the record shows that they were.

The Circuit Court dismissed the bill on the ground of non-infringement, holding that the process calls for a fixed series of steps and that the defendant does not follow the precise sequence as stated in the claims.

The court finds that the third step in the process is "closing the pump connection at a point between the chemical and the pump" and the fourth step is "incandescing the filament." The conclusion is therefore reached that the defendant does not use the process because it brings the filament to incandescence before closing the pump.

We are constrained to think that this is too strict an interpretation of the claims. If it appeared that the process was in the least dependent upon the closing of the pump prior to incandescing there would be more force in the contention, but it does not so appear. In order to describe intelligently the method practiced by him it was necessary for the patentee to state the various steps taken. When he reached the two steps in question he was compelled to mention one before the other although he might have reversed the order with equal propriety. In other words closing before incandescing is not of the essence of the invention.

Suppose that in a chemical patent the inventor, after describing the compound to be filtered should claim a process, the third and fourth steps being to place the compound on the filter bed and insert the bed in the filter. Could a user of the process escape the charge of infringment by showing that he inserted the bed in the filter and then placed the compound upon it? We think not. Very few patents could survive so illiberal a construction as is contended for by the defendant. A similar question arose in the Malignani Case supra, and we agree with Judge Cross in saying:

"The defendant does not avoid infringement by merely transposing the steps of the process. Transposition of the various steps is, under such circumstances, mere evasion."

In Hammerschlag v. Bancroft (C. C.) 32 Fed. 585, Judge Gresham says:

"The defendant may not observe the same order in the various steps of the process that we find described in the reissued patent, but it does not follow that the processes are different because the various steps do not succeed each other in precisely the same order."

Assuming, therefore, that the defendant makes the asserted transposition, a proposition which is by no means clear on the proof, we are satisfied that infringment is not thus avoided.

The decree is reversed with costs and the cause is remanded to the Circuit Court with instructions to enter the usual decree for the complainant.

NOYES, Circuit Judge (dissenting). In the Malignani invention as much air as possible was withdrawn from the lamp by an air, pump attached to a glass tube projecting from the lamp. Then the connection with the air pump was shut off by "soldering up" the end of the glass tube. The process of volatilizing a chemical in the lamp then followed, resulting, through a combination of gases and consequent precipitation, in a nearly perfect vacuum.

The sealing of the end of the glass tube was for the purpose of shutting off the connection with the air pump. There is nothing whatever in the Malignani patent to indicate that the inventor had any other end in view than to prevent the return of the air to the lamp. The soldering, of course, required heat, but heat was a mere incident. If sealing the tube without the use of heat had been possible, it is obvious that it would have answered every purpose.

The heat used to solder the end of the tube sometimes prematurely volatilized the chemical, so that the problem before the users of the Malignani process was to shut off the connection with the air pump without the use of heat. Manifestly any sealing of the glass tube required the use of heat. So it was evident that the closure should be made at some other point in the connection. The present patentee—according to his specifications—made it by the use of a pinch-cock upon the rubber connection. This prevented the air from returning to the lamp just as the "soldering up" process did, and, of course, did not require the use of heat.

But it was old in the art to use pinch-cocks in connection with air pumps, and the use of this old device by the patentee accomplished no new results. The air drawn from the receptacle—the lamp—by the air pump was prevented from returning, just as pinch-cocks prevented the air from returning to other receptacles, including lamps, since their use began. The majority of the court say that:

"By the substitution of an ordinary pinch-cock for heat in closing the connection between the lamp and the pump it (the alleged invention) has accomplished a most useful and beneficial result with a corresponding economy of time, labor and material."

I do not question this statement. I merely say that, however many incidental advantages may have followed the use of the old device, the result which it accomplished—the shutting off of the air—was old. And I have never supposed that it involved invention to use old means to accomplish old results, even though those particular means in a particular case might possess incidental advantages over other means.

In view of the prior art, it seems to me that any person skilled in it should have been able to remedy the difficulties arising from the use of heat in shutting off the connection between the lamp and the air pump by employing the well-known pinch-cock for that purpose. And the fact that the use of the pinch-cock produced economies in time, labor, and material did not turn mechanical skill into invention.

Thus far the process of the patent has been treated as requiring the use of a pinch-cock to close the connection between the lamp and the air pump. The claims are, however, broader than the specifications and drawings, and it is contended that they cover a process wherein the connection is closed by any apparatus which does not necessitate the use of heat. Closure without heat is said to be the process of the present patent; closure with heat, the Maglinani process.

But closure was the essential thing of the Maglinani process. Heat was a mere incident. This incident proved troublesome. What was to be done? As already indicated, I think that mechanical skill should have been quite sufficient to answer this inquiry by pointing out that the difficulties arising from a closure with heat should be remedied by a closure without heat—there being appliances old in the art suitable for making it.

Treating the patent as broad in scope or narrow in scope, it is, in my opinion, void for want of invention. It must be borne in mind that this is not a case where special consideration must be given to a simple expedient because it accomplishes a result long sought for, but never attained. There is nothing in the record to indicate that any one other than the owner of the Maglinani process sought to remedy its deficiencies, and this patent was applied for soon after the Maglinani patent was granted.

In my opinion, the decree of the Circuit Court should be affirmed, with costs.