AURORA MANTLE & LAMP CO. v. KAUFMANN.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917.)

No. 2291.

1. PATENTS ⊂⊃328—VALIDITY AND INFRINGEMENT—GAS MANTLE.
    The Kaufmann patent, No. 940,639, for an incandescent gas mantle, which consists of an inverted mantle having the bottom cut into two or four sections and united by seams forming ribs, instead of having the tube tied or shirred together to form the closed bottom, was not anticipated and discloses invention; also *held* infringed.

2. PATENTS ⊂⊃168(2)—DIVISIONAL APPLICATION.
    That an applicant for a patent, including in his application claims for both a process and its product, on rejection of the process claims as new matter, voluntarily canceled them, with the expressed reservation of the right to make them the subject of a future application, which, when made, was recognized by the Patent Office as a divisional application, did not constitute an acquiescence in the rejection, which rendered the process patent invalid.

3. PATENTS ⊂⊃78—PRIOR PUBLIC USE—DIVISIONAL APPLICATION.
    That a divisional application for a process was not filed until more than two years after a public use will not invalidate the patent issued thereon, where until the division the same claims were pending in the original application.

4. PATENTS ⊂⊃328—VALIDITY AND INFRINGEMENT—PROCESS OF MAKING GAS MANTLES.
    The Kaufmann patent, No. 975,769, for a process of making gas mantles, *held* valid and infringed.

---

5. PATENTS ⬡⟿175—PROCESS—INFRINGEMENT.

The patentee of a process is not necessarily restricted to the order in which the steps are named in the patent.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Otto Kaufmann, receiver for the Block Light Company of Ohio, against the Aurora Mantle & Lamp Company. Decree for complainant, and defendant appeals. Affirmed.

From a decree sustaining two patents, No. 940,639, issued November 16, 1909, and No. 975,769, issued November 15, 1910, and enjoining further infringement, appellant appeals. The defenses are invalidity and noninfringement.

The two patents cover an incandescent gas mantle and the process of making it. The subject-matter of the invention is the bottom of an inverted gas mantle. Plaintiff describes his inverted mantle as being "characterized by an open cylindrical top, which is fastened to a supporting ring by a tie thread, and by a round, dome shaped bottom of even thickness, made up of curved sections and having small interior ribs formed by the 'fabric' edges extending inward from the seams which unite the bottom sections of the mantle." The method of making the material of which these mantles are constructed is similar to other gas mantles, all being made of a very thin shell of thorium, an infusorial earth, rendered incandescent by the heat of the gas flame which strikes against it. This finished product, to borrow counsel's language, is obtained in the following manner: "The fibrous material which serves as the base for the infusorial earth with which the mantle is impregnated in the process of manufacture is burnt up and disappears in the final step of that process, which consists in shaping or 'setting' the mantle by burning it over a Bunsen or gasoline burner. The 'fabric' of infusorial earth remains."

All gas mantles must necessarily conform somewhat to the shape of the flame, in order that they may be in contact with the flame throughout, for the light is derived from the incandescence of the mantle rather than from the luminosity of the flame. Inverted mantles were first used in this country about 1903, and the development in the trade since has been rapid. Appellee alone makes between 2,000,000 and 3,000,000 a year.

Advantages of the inverted mantle, under certain conditions, over the upright mantle, are admitted, and patentee claims invention by reason of the alleged advantages of the "seamed" over the "tied" or "shirred" types. The disadvantages of the "shirred" or "tied" type are described by the patentee as follows: "Heretofore such mantles have been made by gathering one end of a tube of knitted material by the use of a string encircling one end of the tube (this is the 'tied' type), or by passing a string through the loops of the knitting and drawing the loops together (this is the 'shirred' type). This is objectionable because these methods crease and fold the fabric and make it unnecessarily weak and dense at the point where the stress is greatest when the mantle is in use, so that it soon breaks at the said weakened point, thereby rendering the life of the mantle short and uncertain, and by reason of the density of the mantle produced in the above ways an unnecessary increase in gas pressure is required to properly incandesce it, the result of which is to shorten the life of the mantle, to increase the expense of its use, to complicate its use, and render it less efficient."

Patentee's object was to abolish the folds and creases that resulted from tying or shirring the fabric and to strengthen the fabric generally, and particularly at the apex where the fabric is united, securing at the same time, it is claimed, greater incandescence. Two forms are in common use. In the one, the fabric is cut into four sections, which when sewed together, make two seams. In the other, the fabric is cut into two sections, which, when sewed together, make but one seam.

Figure A illustrates an inverted tied or shirred mantle.

Side View.                                           Bottom View.

Figure B represents patentee's seamed mantle with two seams.

Side View.                                           Bottom View.

Figure C represents patentee's seamed mantle with one seam.

Side View.                                           Bottom View.

Defendant's product is a "one" seamed type. The claims in issue of the product patent are 1–6, inclusive; 2 and 6 being representative, and as follows:

2. "An inverted mantle having a cylindrical open top, and a dome-formed smooth-surfaced base, consisting of two sections, each of the general form of a quarter of a sphere, and seamed together at their edges."

6. "A mantle for incandescents comprising a tube of fabric having a plurality of seams for closing one end of the tube, which seams extend transversely and are located within the tube, and produce reinforcing ribs extending from the median portion of the closed end of the mantle."

Claims 1 and 3 of the process patent are in issue. No. 3 reads as follows:

"The process of manufacturing mantles consisting in forming a tube of fabric, impregnating said fabric with an incandescing material, severing the fabric transversely of its length so as to form a plurality of cut and rounded edges, securing said edges together to form seams, turning said mantle inside out, and then burning said fabric over a Bunsen burner, to set the fabric in its final shape, and stiffen the seams within the mantle."

243 F.—58

Paul Carpenter, of Chicago, Ill., for appellant.
Frederick P. Fish and Joseph L. Levy, both of New York City, for appellee.

Before MACK, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). Appellant's attack upon the validity of the product patent may be divided into the following heads: (A) Patentee's product was merely the application of practical mechanics and did not involve invention. (B) The steps applied were taken from the prior art. (C) Patentee's product is the result of actual aggregation of a number of old steps.

[1] It is urged that the securing of shape and permanency of form by the means adopted by appellee was long known to the art and had previously been covered by patents. For example, caps, mittens, hats, boots, and stockings, etc., have long been made from cloth, and shape and permanency of form secured by the methods here used. It should be borne in mind that appellee's object was to secure a mantle of greater strength and capable of furnishing greater light. The mere fact that all the elements of a new combination are old is not sufficient to prevent patentability. The fact that the end was a new and beneficial one, never before attained, is persuasive evidence of invention, even though the elements combined were well known. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177. The result of this combination of known elements was much sought. Shape, as such, was unimportant; but any result that made it possible for the manufacturer to produce a mantle, the incandescent material of which was so situated in reference to the flame, that greater luminosity throughout the entire surface was secured, was desired by all manufacturers. Strength, obtained from the seams or ribs was valuable in addition to its mere contribution as a factor in securing permanency of shape, for by it the "speck" or "dark spot" on the apex of the mantle was eliminated, and at the most important part of the illuminating body greater incandescence was secured. These results so secured, even by means used in other arts, for different purposes, manifested invention.

But it is asserted that these claims of strength and increased incandescence were imaginary, mere paper claims, and are not in fact existing, and the results so obtained were self-evident. The evidence as to the extent of the patentee's contribution to the art, while conflicting, supports appellee's contention in this respect. The fact that the completed product, though more expensive than the old form of mantle, is now extensively used, and the further fact that appellant has seen fit to manufacture the product in large quantities, are convincing, if not conclusive. In view of the appellant's use of the patented invention, the claim is poorly asserted that the improvement contributed no advance in the art. Gandy v. Main Belting Co., 143 U. S. 587, 596, 12 Sup. Ct. 598, 36 L. Ed. 272; Western Electric Co. v. La Rue, 139 U. S. 601, 608, 11 Sup. Ct. 670, 35 L. Ed. 294.

Nor was the solution of the problem confronting Kaufmann a sim-

ple and self-evident one. An invention, when understood, often seems simple. But it should be borne in mind that the trade demanded a successful inverted mantle. The shirred or tied mantle only partially met the demand. Greatly increased sales in gas mantles followed. Nor was it self-evident. Experiments were necessary, according to the evidence, before the final form was perfected.

Was there infringement? In view of the testimony of the appellant's expert, this subject is hardly debatable. Its witness admitted infringement. While such an admission is not binding upon the litigant, yet this court agrees with the witness that there was unquestionably infringement. It follows, therefore, that product patent, No. 940,639, is valid and was infringed by appellant.

[2] The attack on the process patent, while differently phrased, involves the action of the Commissioner of Patents in striking out several claims appearing in the original application. Kaufmann first attempted to secure a process and a product patent through one application. The examiner ordered the claims for the process patent stricken out. Applicant was then confronted with the necessity of an appeal or the filing of a new application. The action of the Patent Office was discretionary (U. S. ex rel. Steinmetz v. Allen, 192 U. S. 547, 561, 24 Sup. Ct. 416, 48 L. Ed. 555), which discretion, unless clearly abused, was not subject to review. Kaufmann, therefore, acquiesced in the ruling and made a separate application for the patent on the process. The Patent Office understood the situation clearly, and recognized Kaufmann's right to a division. In speaking of the matter the examiner says:

"A claim similar to the claims now in this case was submitted in application No. 283,743, filed October 21, 1905, which has matured into patent No. 940,639, November 16, 1909. Said claim was rejected as involving new matter. Applicant amended the claim, but traversed the rejection of the claim as new matter, and later of his own motion canceled the amended claim, with the expressed reservation that claims to such subject-matter might be made in a future application. The office does not hold that applicant acquiesced in the rejection of claim 8 of the former application as new matter, as he expressly did not so acquiesce, and in fact no action was taken by the office on the amended claim. Moreover, on page 1, line 23, applicant apparently means to say that the application is a division of former application 283,743 of October 21, 1905."

In the light of these facts, appellant's contentions are not well taken. Its claim that the process patent covers the same invention as the article patents is unsupported by the facts and contrary to the ruling of the Patent Office.

The further objection to the validity of the process patent, that the product can be produced only by this process, and, if sustained, the process patent would unlawfully extend appellee's product monopoly, fails, because in fact the product patent can be made in other ways. Century Electric Co. v. Westinghouse E. & Mfg. Co., 191 Fed. 350, 359, 112 C. C. A. 8; Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 301, 318, 29 Sup. Ct. 495, 53 L. Ed. 805.

Its second objection, while disputing its previous position is not supported by the record. Appellant says:

"Kaufmann admits that the process in the process patent is not disclosed in the article patent, and consequently the process application could not be a divisional case."

Kaufmann's process patent is disclosed in the original application, and is restricted to the claims covering the process found therein.

[3] Appellant's contention that the process patent is invalid, because separate application was not filed until more than two years after a public use, is untenable, in view of the fact that the prior application covering the same claims had for two years been pending in the Patent Office and had been rejected because the claims for process patent were included in the application for the article patent.

### Noninfringement of Process Patent.

[4, 5] As to claims 1 and 3, appellant contends patentee provides five steps, which are not infringed, because steps B, C, and D are employed by the defendant in the order of C, B, and D. Whether the patentee is restricted to the order named depends upon the subject and the character of the various steps so designated. In the present case we conclude that the claims are infringed, even though the order of the three steps B, C, and D, is changed. Gen. Electric Co. v. Hill-Wright Electric Co., 174 Fed. 996, 98 C. C. A. 566.

The other alleged differences in appellant's process from the steps outlined in appellee's claims hardly justify separate consideration. We conclude that process patent, No. 975,769, is valid, and claims 1 and 3 are infringed.

The decree is affirmed.