Rich, Judge,
delivered the opinion of the court:
These are five appeals from decisions of the Patent Office Board of Appeals affirming rejections by the Primary Examiner of all the claims of each of appellant’s applications, Nos. 111,111 to 111,115, inclusive, all filed on August 19, 1949, each rejection being based on the ground of double patenting in view of appellant’s patent No. 2,614,133, granted October 14, 1952, on an application filed July 30, 1949. The patent to Olson, No. 2,585,490, granted February 12, 1952, was also relied on in support of the rejections. While separate records and briefs were filed in each appeal, the issues are so closely related that we shall dispose of all the appeals in a single decision.
The Ockert patent, which forms the primary basis for the rejection in each case, relates to a continuous process for separating organic compounds, especially liquid hydrocarbons, of different adsorbabilities by the use of a finely divided selective adsorbent, such as silica gel or activated carbon. The process involves passing the organic compound in liquid phase and the finely divided adsorbent through a vertical column in opposite directions. In the embodiment shown, the adsorbent passes downwardly from the top of a column defining an adsorption zone, while the organic compound is directed upwardly into the column at an intermediate point. The saturated components of the compound, which are not readily adsorbed, pass out through the top of the column with a comparatively small portion of the desorbing agent while the adsorbent and the unsaturated components which have been adsorbed by it fall to the bottom of the column, whence they are carried by a fluid transporting medium to the top of a second vertical column which defines a desorption zone. The adsorbent and the adsorbed components fall through this desorption zone, where they encounter a liquid desorbing agent which moves upwardly through the zone, from a point near the bottom thereof, and removes the ad *1026 sorbed components from the adsorbent. The said components pass out at the top of the desorption zone together with the desorbing agent.
The adsorbent material which reaches the bottom of the second column or desorption zone is carried back by a fluid transporting medium to the top of the adsorption zone for a repetition of the cycle.
The saturate organic compounds drawn from the top of the adsorption zone and the unsaturate organic compounds drawn from the top of the desorption zone are separated in distillation zones from the desorbing agent with which they are associated.
The transporting medium which carries the adsorbent and the un-saturate components from the adsorption zone to the desorption zone comprises material drawn from the top of the desorption zone, while the medium which transports the materials from the bottom of the desorption zone to the top of the adsorption zone is obtained from the top of the adsorption zone. Part of the unsaturate products removed from the distillation zone are returned to the adsorption zone Avhich they enter at a point above the bottom but below the point at which the charge of organic compounds is introduced, while the de-sorbing agent which is separated from the unsaturate components in the distillation chamber is returned to the desorption zone.
The Olsen patent was relied on by the Patent Office tribunals as showing a continuous adsorption process generally similar to that of the Ockert patent, but with the adsorption and desorption taking place in separate portions of a single vertical column. In the embodiment illustrated by Olsen the adsorption zone is located in the lower part of the column and the desorption zone in the upper, but it is stated in the patent specification that that arrangement may be reversed if desired.
The five applications involved in the present appeals disclose processes which are basically similar to that of the Ockert patent, and it is admitted by appellant that “the several applications and the patent have a common novel generic concept.” Accordingly, it will not be necessary to discuss in detail the disclosure of each of the applications. It will be sufficient to consider only those differences between the several applications and the patent which are set forth in the appealed claims. This will be done hereinafter in connection with the individual treatment of the several appeals. Our consideration of these matters has been facilitated by a most helpful table of differences included in a supplemental brief filed by appellant and clearly showing the distinctions on which he relies.
A large number of claims is presented by these appeals and many, of them are long and somewhat involved, as will appear below, but the differences between the claims of the patent and those of the applications are comparatively simple. Under these circumstances we *1027 need, not encumber this opinion with any of the claims. Detailed consideration may be confined to the points of difference.
Before proceeding to a discussion of the individual appeals we shall dispose of certain general questions which are applicable to all of them.
Appellant argues that if he had inserted in a single application the disclosures and claims of his patent and of his applications here involved, division would have been required by the Patent Office and that, under such circumstances, a rejection on the ground of double patenting is improper. The same contention was recently made and decided adversely to the applicant in In re Russell, 44 C. C. P. A. (Patents) 716, 239, F. 2d 387, 112 USPQ 58, for reasons which are equally applicable here.
Appellant further urges that although there is a novel generic concept common to his applications and patent, it has not been possible to draw a patentable generic claim covering that concept, and that the appealed claims and those of the patent are mutually exclusive.
We are sympathetic with appellant, as was the board, in view of the situation in which he finds himself, but the statutory requirements as to the granting of patents cannot be waived because of the exigencies of particular cases. 35 U. S. C. 101, like its predecéssor E. S. 4886, provides that an inventor may obtain a patent for his invention. There is no statutory provision for the granting of a plurality of patents on a single invention, and this court has repeatedly held that if two patents are to be granted there must be two inventions. In re Jennings, 35 C. C. P. A. (Patents) 1163, 167 F. 2d 1014, 77 USPQ 613; In re Ward et al., 43 C. C. P. A. (Patents) 1007, 236 F. 2d 428, 111 USPQ 101, and cases there cited. It is also well settled that, in determining whether the claims of an application are patentably distinct from those of a patent it is proper to consider what is disclosed by the prior art. In re Ward et al., supra; In re Barge, 25 C. C. P. A. (Patents) 1058, 96 F. 2d 314, 37 USPQ 546.
Appellant also alleges that the claims of his applications and patent are not cross-readable, and that accordingly the allowance of the appealed claims would not result in any extension of monopoly. Such cross-reading, however, is not indispensable to a holding of double patenting. In re Ward et al., supra, and cases there cited. If only one inventive concept is present, two patents cannot properly be granted, regardless of the scope or relationship of the claims, or of the order in which the applications were filed or the claims presented. Whether there is more than one invention in the patent and the five applications, we deal with later.
*1028 Appellant also complains that, although the examiner called upon him to maintain a line of division between the five applications involved in these appeals, no similar requirement was made with respect to those applications and the one on which his patent was granted. He points out that he was apparently able to satisfy the examiner as to the requirement actually made and suggests that he might have similarly overcome such a requirement involving the application on which his patent was granted. Appellant, however, was fully cognizant of the fact that he had six applications pending and of the necessity of maintaining clear lines of distinction between all of them at the risk, if one issued, of such a rejection as he has met with. Moreover, even assuming the examiner to have been derelict in his duty, that fact could not justify the allowance of patents contrary to the statute.
For the foregoing reasons we conclude that the rejections for double patenting here under consideration must be affirmed unless it appears that the appealed claims are drawn to inventive concepts which are patentably distinct from that defined by the claims of the Ockert patent. We shall, therefore, consider, under headings referring to the individual appeals, those features which are relied on by appellant as establishing such patentable differences.
Appeal No. 6257
The distinction relied on by appellant between the claims of his patent and those of his application No. 111,111, is that the patent claims call for the use of adsorption and desorption zones in the form of separate columns, while the claims of the application state that the adsorption and desorption zones are located in the upper and lower portions, respectively, of a single elongated column. With the latter arrangement, the adsorbing agent and the adsorbed charge materials pass by gravity from the adsorption zone to the desorption zone and accordingly the transporting medium which is used in the patented process for effecting that specific movement is dispensed with.
We are of the opinion that the determination as to whether one or two columns are to be used involves merely a matter of choice or design and that it would be obvious to a skilled worker to use one column or two as might be dictated by considerations of convenience or expediency. The adsorption and desorption zones function in the same way, whether or not they are located in a single column. The differences between the claims of the application and patent relate solely to the physical location of parts and the specific means used for transferring fluid from one point to another.
It is true that the patent claims include the step of using a trans *1029 porting medium obtained from the desorption column for transporting the materials to that column, which step is neither shown nor claimed in the application. However, both the application and patent show and claim a corresponding step, involving the use of a transporting medium obtained from the adsorption zone for transferring-materials to that zone from the desorption zone, and such a step is therefore a part of the inventive concept common to the application and patent. Under such circumstances, the virtual duplication of that transfer step would be obvious when the columns are so arranged that the materials will not pass bj gravity from the adsorption zone to the desorption zone.
It follows that the essential inventive concept underlying the claims of the patent and of application here involved is the same. The difference resides merely in locating the adsorption and desorption zones or columns in one or the other of two obvious relationships, and in adapting the means for transporting material from one zone to the other to the particular zone location selected. In our opinion, the holding of the Patent Office tribunals that the claims here involved are not drawn to an invention distinct from that claimed in the Ockert patent was proper, and the decision of the board in this appeal will be affirmed.
Appeal No. 6258
Application No. 111,112 is similar in all essential respects to application No. 111,111, above considered, except that in 111,112 the desorption zone is located above the adsorption zone, in a single column, with a gravity flow between them, and the materials are transferred from the bottom of the adsorption zone to the top of the desorption zone by means of a transporting medium drawn from the latter zone.
Accordingly, application 111,112 involves nothing more than a reversal of zones with respect to application 111,111, which reversal would be obvious to one skilled in the art, especially in view of the Olsen patent which teaches that the adsorption zone may be located above or below the desorption zone, as desired. The decision of the board in Appeal No. 6258 will therefore be affirmed for reasons similar to those given above in connection with Appeal No. 6257.
Appeal No. 6259
Appellant’s application No. 111,113 is similar to the Ockert patent in that it discloses a process in which the adsorption and desorption zones take the form of separate, horizontally spaced columns, and fluid is transported from the bottom of each to the top of the other by means of a transporting medium. However, in the patented *1030 process the transporting medium used between the bottom of the adsorption zone and top of the desorption zone is derived from the top of the latter zone; and the transporting medium used between the bottom of the desorption zone and top of the adsorption zone is derived from the top of the adsorption zone, whereas in the process of application 111,113 a stream of desorbing agent is used as the transporting medium in each case. This difference in transporting media is brought out in the claims of the application and of the patent, and is solely relied on by appellant as constituting a patentable difference between them.
As pointed out in the examiner’s answer, each of the transporting media employed in the patented process consists, in part, of desorb-ing agent and, as noted in the brief for the Commissioner of Patents, the appealed claims do not state that the transporting medium consists of desorbing agent and nothing else. Accordingly, the claims of the application and patent are not mutually exclusive. Moreover, we agree with the statement in the brief for the Commissioner that the record fails to show that there is any significant or unobvious difference flowing from the use, as transporting medium, of desorbing agent alone as distinguished from the mixture of desorbing agent and other materials used in the patented process, or vice versa. We are therefore of the opinion that no patentable distinction can be predicated on the difference between the transporting media of application 111,113, and the Ockert patent, and we affirm the decision of the board in Appeal No. 6259.
Appeals Nos. 6260 and 6261
The applications in these appeals correspond to those in Appeals Nos. 6257 and 6258, respectively, having the same single column arrangements, but they call for the use of desorbing agent as a transporting medium instead of the mixture of desorbing agent and other materials employed in the applications in the appeals last mentioned. For the reasons given in connection with Appeal No. 6259, where we discussed the transporting media, we conclude that there is no patentable difference between those transporting media. Accordingly, the decisions of the board in Appeals Nos. 6260 and 6261 are affirmed for reasons similar to those given in connection with Appeals Nos. 6257 and 6258.
The decision of the Board of Appeals in each of Appeals Nos. 6257 to 6261, inclusive, is affirmed.
Worley, J., because of illness was not present at the argument of these appeals and did not participate in the decision.
Jackson, J., Retired, recalled to participate here in place of Cole, J., absent because of illness.