22 C. C. P. A. (Patents)

### In re CADY.

**Patent Appeal No. 3433.**

**Court of Customs and Patent Appeals.**
**April 29, 1935.**

Charles M. Thomas and Francis D. Thomas, both of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This appeal, in the form finally presented to us, is from a decision of the Board of Appeals of the United States Patent Office rejecting two claims of a divisional application for patent solely upon the ground of double patenting, the examiner's decision rejecting them solely upon prior art being, in the same decision, reversed.

On March 19, 1926, appellant filed an application, serial No. 95,820, for patent relating to prepared roofing. The application recited that it was a continuation of ap-

pellant's then pending application, serial No. 526,329, filed December 31, 1921 (which subsequently ripened into patent No. 1,599,-512 issued September 14, 1926), "as to all subject matter common to both."

Application serial No. 95,820 included both process and product claims, and the Primary Examiner made a ruling requiring division, which ruling, being traversed by appellant, was approved by the Classification Examiner with the statement, "The article is not limited by the method of making."

The record in the instant case does not contain the several office actions relating to application serial No. 95,820, but it does disclose that appellant, after the ruling requiring division, struck the product claims therefrom and on January 2, 1930, filed a divisional application containing them; it being serial No. 418,206, the application here involved.

Application serial No. 95,820 containing only the process claims was prosecuted to completion and culminated in patent No. 1,755,049, issued April 15, 1930, some three and a half months after the filing of the divisional application containing the product claims.

The divisional application here involved seems to have been first tentatively rejected by the examiner on June 26, 1931. Thereafter it was amended in certain respects, not clearly stated in the record, and, as amended, was finally rejected by the examiner on May 24, 1932. As so rejected, it contained three product claims numbered, respectively, 5, 11, and 12.

Appeal was taken to the Board of Appeals and, from the examiner's statement to the board, it appears that his rejection of all three claims was based solely upon prior art; the references cited being:

Kirschbraun, 1,612,776, December 28, 1926.

Abraham, 1,126,932, February 2, 1915.

Overbury, 1,482,090, January 29, 1924.

Upon appeal, the Board of Appeals affirmed the examiner's rejection of claim No. 11 upon Kirschbraun (the other references apparently having been withdrawn) and reversed his rejection of claims 5 and 12 upon that ground, but itself rejected them upon "the ground of double patenting with respect to appellant's patent 1,755,049."

Appellant thereupon presented a petition for reconsideration, filing therewith an affidavit of the patentee Kirschbraun to which allusion will be made later. The board denied the petition as to claim No. 11 and adhered to its rejection of claims Nos. 5 and 12 upon the ground of double patenting. Later, the board, in response to a formal request, advised that it had considered the Kirschbraun affidavit but that it was not regarded as pertinent to the questions before it.

The instant appeal followed, and at the hearing before us appellant moved to dismiss as to claim 11. This motion will be granted. We have, therefore, to consider only claims 5 and 12, which read as follows:

"5. A roofing element comprising a felted fibrous base of sheet material cut to desired size and shape, a sealing coat of waterproofing material overlying both faces and all the edges of the element, and a masking layer of grit partially embedded in the coating on the surface and edges of the element which are exposed to the weather when the element is laid on a roof."

"12. An individual shingle unit to be used for building construction cut from prepared roofing and having butt and adjacent side edges and being provided with vertical slots to provide shingle simulating tabs and a continuous protective bituminous coating covering at least the exposed portion of the upper face and the exposed butt and side edges and the edges of said slotted portions of the unit and a coating of comminuted grit applied to the upper face of said exposed butt and side edges."

The sole question to be determined is that of whether the allowance of the claims at issue will result in double patenting, in view of the patent, No. 1,755,049, of April 15, 1930, granted to Cady upon the process claims. The process claims of the said patent are two in number. Claim No. 1, which is typical, reads: "1. The process of treating individual shingle units cut from prepared roofing and having butt and adjacent side edges which includes the successive steps of coating all portions of the units uniformly with waterproofing bituminous material and applying granular surfacing material to the units in a continuous operation."

The requirement of division respecting application serial No. 95,820 was made in consonance with rules 41 and 42 of the United States Patent Office, the here material provisions of which read:

"41. Two or more independent inventions can not be claimed in one application;

but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application: * * *.

"42. If several inventions claimed in a single application be of such a nature that a single patent may not be issued to cover them, the inventor will be required to limit the description, drawing, and claim of the pending application to whichever invention he may elect. The other inventions may be made the subjects of separate applications, which must conform to the rules applicable to original applications. If the independence of the inventions be clear, such limitation will be made before any action upon the merits; otherwise it may be made at any time before final action thereon, in the discretion of the examiner. A requirement of division will not be repeated without the written approval of the examiner of classification. After a final requirement of division, the applicant may elect to prosecute one group of claims, retaining the remaining claims in the case with the privilege of appealing from the requirement of division after final action by the examiner on the group of claims prosecuted."

[1, 2] It is presumed that the Primary Examiner and the Classification Examiner made the rulings requiring division before there had been any consideration of the application upon the merits, such as testing the claims by prior art or by other factors affecting their per se patentability, but it is also the presumption that those tribunals, having measured the claims by each other, that is, having considered the process claims in the light of the product claims and vice versa, were of the opinion that, if invention did exist as to both classes, two independent inventions would be involved, not dependent upon each other and not mutually contributing to produce a single result so as to render them claimable in one application.

It was only upon such theory that the examiner had authority to make the divisional requirement, and the rulings, in legal effect, amounted to an adjudication that, if invention were found to be present, two distinct and independent inventions were claimed.

As we understand it, under the Patent Office practice, process applications relating to the roofing art are prosecuted in a different division from that in which product applications in the same field are pros-

ecuted, and before a different examiner. This fact is of importance because of the practical difficulties which confront an applicant in attempting to prosecute two applications simultaneously so as to bring them to culmination upon the same date.

Obviously, since appellant elected to take the course which he pursued, the question of whether the requirement for division was proper was not presented for determination to the Board of Appeals, and no definite opinion was expressed thereon by that tribunal. It is difficult to escape the conclusion, however, in view of its holding that there is no patentable distinction between the process and product claims and in view of its reversal as to prior art, that, had the question of division been before it, the holding would have been that the requirement was improper and both the process and product claims would have been allowed in one application. Such holding, at least, would appear to be in harmony with the principle applied by this court in the cases of In re Rupert E. Rundell, 55 F.(2d) 450, 19 C. C. P. A. (Patents) 932, and In re Wilfred J. Hawkins, 57 F.(2d) 367, 19 C. C. P. A. (Patents) 1104.

If such a holding would have been correct in the instant case, it becomes immediately apparent that appellant in acquiescing in the ruling of the examiners, and following the course permitted by the rules of the Patent Office, may have suffered a loss of substantial rights, and we agree with appellant's contentions that under the facts of this case every reasonable doubt appertaining to the issue should be resolved in his favor.

It is noted that one provision of rule 42, supra, reads: "If the independence of the inventions be clear, such limitation [that of the description, etc., in the application elected to be prosecuted] will be made before any action upon the merits; otherwise it may be made at any time before final action thereon, in the discretion of the examiner."

In the instant case, as has been said, the requirement for division and procedure under rule 42 was made of appellant "before any action upon the merits." Both the Primary Examiner and the Classification Examiner manifestly regarded the "independence of the inventions" to be "clear," else the order would not have been made. Their judgment as experts is entitled to great weight; and, as of course, if there be an independence of invention as to the proc-

ess and product claims, no question of double patenting arises.

We are in agreement with the contention of appellant that the legal precedents are uniformly to the effect that "double patenting is not sustainable when the product can be fabricated by processes other than that secured by the issued process patent," and this doubtless was the basis upon which division was required in the instant case. Providence Rubber Co. v. Goodyear, 9 Wall. (76 U. S.) 788, 19 L. Ed. 566; Seymour v. Osborne, 11 Wall. (78 U. S.) 516, 20 L. Ed. 33; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 29 S. Ct. 495, 53 L. Ed. 805; United States ex rel. Steinmetz v. Allen, 192 U. S. 543, 24 S. Ct. 416, 48 L. Ed. 555.

In General Electric Co. v. P. R. Mallory & Co., Inc., 298 F. 579, 584, the Circuit Court of Appeals of the Second Circuit said: "That double patenting exists here * * * is a new point of law. It rests on the fact that Just's original American application contained disclosure of several processes by which a single result—i. e., the tungsten filament of the patent in suit—could be attained. The Office required division; the issue of the patent at bar was delayed * * * but one divisional application, covering one process only, became No. 878,463 in 1908, four years before the master patent for the product came out of the Office; hence it is said double patenting resulted. There would be force in the argument, if there were but one process, and the only possible result thereof was the single product; but the more philosophical way to view the question is to ask whether the two patents (878,-463 and 1,018,502) cover the same invention, when properly construed. Thomson, etc., v. Elmira, etc., Co., 71 F. 396, 18 C. C. A. 145. They do not; one being only for a process of making, and the other for the thing made, with disclosure of another process."

To the same effect was a holding of the Circuit Court of Appeals of the Seventh Circuit in the case of Aurora Mantle & Lamp Co. v. Kaufmann, 243 F. 911.

It is not, of course, intended to indicate here that there should be any modification of the doctrine stated by this court in the case of In re Albert C. Fischer, 57 F.(2d) 369, 370, 19 C. C. P. A. (Patents) 1077, where we said: "We think the weight of authority is to the effect that an inventor is only entitled to one patent for one invention, and that he cannot prolong his monopoly by claiming nothing more than the same invention in different language."

The rule there stated was sound; but, under the circumstances of this case, where the Primary Examiner in requiring division must have been of the opinion that the inventive distinction between appellant's process and product claims was clear, his decision should not be lightly overruled.

We do not find in either of the decisions of the Board of Appeals any close analysis or careful comparison of the process and product claims, and we are unable to agree with the board's holding that the affidavit of Kirschbraun was not pertinent to the issue.

Upon the contrary, the said affidavit seems to us to be pertinent, and we regard it as quite persuasive in support of what must have been the reasoning of the primary tribunals in directing the division. It shows, we think, that appellant's product as defined in the appealed claims may be produced by processes other than the processes patented. It, at least, creates a substantial and reasonable doubt which, in our view, should be resolved in appellant's favor.

Additional authorities, having more or less bearing upon the issue here involved, are Benjamin Electric Mfg. Co. v. Dale Co. (C. C. A.) 158 F. 617; American Hatters & Furriers Co., Inc., v. Danbury & Bethel Fur Co. (D. C.) 47 F.(2d) 268; Fulton Co. v. Janesville Laboratories, Inc., et al. (C. C. A.) 21 F.(2d) 428; Independent Oil Well Cementing Co. v. Halliburton et al. (C. C. A.) 54 F.(2d) 900. See, also, decision of Commissioner of Patents Allen in Ex parte Davis, 1904 C. D. 85.

The appeal is dismissed as to claim No. 11, and the decision of the Board of Appeals rejecting claims 5 and 12 upon the ground of double patenting is reversed.

Reversed.