53 CCPA
**Application of Arthur Sinclair TAYLOR.**
**Patent Appeal No. 7601.**

United States Court of Customs
and Patent Appeals.
May 12, 1966.

Samuel Branch Walker, Stamford, Conn., William P. Spielman, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

SMITH, Judge.

The sole issue [1] here is whether the rejection of claim 1 of the application on appeal [2] is proper. The rejection is for double patenting and is predicated on the claims of appellant's prior patent.[3] The application on appeal is a continuation-in-part of the application on which appellant's prior patent was issued.

The appealed application and the patent are each concerned with a film of collagen which may be slit into ribbons. Collagen is a protein found in, e. g., intestines and tendons of animals. Collagen had been fluidized and cast into ribbons prior to appellant's invention but a problem which had not been solved in this art was how to produce ribbons of collagen which had a uniform cross-section and suitable strength to permit their use as sutures (including ligatures).

The three patent claims define a process for making a film of collagen. Appealed claim 1 defines a collagen film as a product per se, in terms both of its physical characteristics and a process for making it.

The double patenting rejection was stated by the examiner as follows:

> Claims 1 and 2 are rejected as substantially met by the claims of Taylor, of record, which patent issued from applicant's parent application. While drafted in product form, the instant claims are process claims in substance. The orientation and tensile strength limitations inhere in the claimed process of the Taylor patent.

The Board of Appeals, in its opinion affirming the examiner's rejection, stated:

> Claims 1 and 2 stand rejected as unpatentable for double patenting over the claims of Taylor. We will sustain this rejection. We agree with the Ex-

aminer that the product defined in the instant claims is essentially defined in terms of the process of making it and that this process is substantially the same as that claimed by Taylor. The fact that the claims of the Taylor patent and this application are, technically, in different statutory classes is not, in itself, enough to avoid a rejection on the ground of double patenting. In re Freeman, 76 USPQ 585; 35 CCPA 920; 1948 CD 276; 610 OG 498; 166 F(2d) 178.

The above statements are lacking in clarity as to the reasoning in support of the rejection. The solicitor proposes to explain the rejection as follows:

> * * * The examiner's rejection of claims 1 and 2 was in effect one based upon double patenting, and the board so treated it.
>
> * * * * * *
>
> * * * [The] ultimate issue before the Court is whether the Board was correct in indicating that the process portion of instant claim 1 "is substantially the same as that claimed by Taylor" * * * or whether they are directed to different inventions.

Concerning the board's opinion, the solicitor explains:

> When the Board stated that "this process is substantially the same as that claimed by Taylor" * * * it meant, of course, that the process limitations of instant claim 1 were not identical with (not the same as) the process limitations of any of the patent claims. Stated otherwise, that statement means that there is no patentable distinction between the process limitations in question. * * *
>
> * * * * * *
>
> The Board cited In re Freeman, supra * * * only for the broad prop-

1. Appellant requests withdrawal of the appeal as to claims 2, 3 and 4. The request is granted and the appeal as to these claims is dismissed.

2. Taylor application Ser. No. 197,330 for "Collagen Film," filed May 24, 1962 as a continuation-in-part of application Ser.

No. 704,730, filed Dec. 23, 1957, now issued as U.S. Patent 3,036,341 for "Centrifugal Casting of Collagen to Produce Films and Ribbons."

3. Taylor patent 3,036,341 issued May 29, 1962.

osition that the fact that the claims in the same inventor's patent and application "are, technically, in different statutory classes, is not in itself, enough to avoid a rejection on the ground of double patenting" (166 F.2d 178, 180, 35 CCPA 920, 923). This citation constitutes only a secondary reason why the Board felt the appeal before it lacked merit. * * *

While the above comments of the solicitor are helpful, the basis for the double patenting rejection remains obscure. One aspect of the rejection presents an argument that appellant, in the appealed claim, has set forth but another way of claiming the process defined in the patent claims and that therefore the claims, while using different language, define the same invention, i. e., the same process. A second aspect of the rejection presents an argument that while the claims define different subject matter, i. e., two inventions, there is no "patentable distinction" between them. We will consider both aspects of the rejection.

■ First, do the claims in fact define the same invention, i. e., a process? The answer is no. The appealed claim defines a product per se in terms of its physical properties as well as in terms of a process for making it. The *invention* defined by the appealed claim is a product. The patent claims define a process. Thus, two independent, albeit related inventions are presented, the appealed claim covering a product and the issued patent claiming a process.

In In re Bridgeford, 357 F.2d 679, 53 CCPA —— a "product-by-process" claim was held to define a product. We there agreed with the reasoning of the Board of Appeals that the invention defined by such a claim is a *product* and not a process. Upon analysis, we agreed with the board that the appealed product claims covered the same invention as that claimed in the issued patent claims and affirmed the double patenting rejection there for the reason that the appealed claims covered the same invention as did the patent claims. The appellant in *Bridgeford* argued that the decision in

In re *Freeman,* supra, cited by the board here, held that a product-by-process type claim defined a process and not a product. While we agreed that certain language in *Freeman* could be construed to support such a holding, such a construction is inconsistent with our decision in *Bridgeford* and the decision in *Freeman* was overruled to that extent. It follows, therefore, that the Patent Office cannot here rely on *Freeman* for the proposition repudiated in *Bridgeford,* namely, that a product-by-process claim defines a process.

Here we have a related situation. The patent claims define a process and the appealed claim defines a product, one aspect of which is that it results from certain process steps. The invention, however, as claimed in the appealed claim, is a product per se. Double patenting as a ground of rejection cannot be based on an incorrect analysis of the inventions claimed.

This brings us then to the second aspect of the rejection and to the inquiry as to whether the inventions are "patentably distinct" and therefore properly claimed in separate patents? In re Christensen, 330 F.2d 652, 51 CCPA 1236. We proceed by determining precisely what is *claimed* in the respective claims as the invention. Appealed claim 1 reads as follows:

1. A collagen film of uniform thickness characterized by a substantial orientation of collagen fibers in a single direction and a tensile strength in the direction of orientation at least about 1.6 times the tensile strength in a direction perpendicular to the direction of orientation; produced by centrifuging an acid dispersion of collagen fibers to form a film, continuing to centrifuge until the dispersing liquid has been substantially removed from the film and removing the film so obtained from the centrifuge.

Patent claim 1, defining a process, reads as follows:

1. A process of making a thin collagen ribbon of uniform cross-section which comprises: rotating rapidly a

mass of a meltable wax at least the surface of which is in molten form about an axis to form a liquid surface concentric with said axis, cooling and solidifying the wax, to form a smooth solid film forming surface which is concentric with said axis, spreading interiorly on said surface a thin layer of a dilute aqueous regenerable collagen mass, evaporating the water to form a film, while continuing to rapidly rotate; then discontinuing the rapid rotation, cutting a helix through the thus formed film, to form a ribbon, and removing the ribbon from the forming surface.

Our inquiry as to precisely what inventions are defined in the above claims is simplified in this case by the arguments advanced by the appellant and by the solicitor to support their respective positions. We shall set forth such of these positions as we find to be necessary for disposition of this appeal.

The solicitor's position, in summary, is that the appealed claim and the patent claims differ only in "scope" and "breadth of language" meaning, apparently, that all the claims should have been in the same application. One fact referred to by the solicitor in support of this position is that the appealed application and the patent disclose the identical process for making the product. This is not disputed by appellant. Similarly, the solicitor does not dispute the fact that the process steps recited in appealed claim 1 are not identical to the process steps recited in the patent claims. The solicitor states in his brief:

The identical process is disclosed in both the instant and the patented applications. It necessarily follows that the product must be the same in each case, provided the same starting collagen composition is used. The added matter in this instant application * * represents merely a belated discovery by appellant of the properties of the product produced by the process of claims 1, 2 and 3 of his patent. In view of the identity of "process" disclosures, the product of the process of

the patent claims will necessarily be a collagen film as recited in the first five lines of instant claim 1.

\* \* \* \* \* \*

\* \* \* the patent claims differ from the instant claim only in matters of scope, and in the recitation in the instant claim of product characteristics which inherently result from the practice of the process of the patent claims. These differences are not such as can properly be the basis of a patentable distinction between a claim of an application and a claim of a patent. \* \* \*

The solicitor thus seems to characterize the issue as involving an oversight in claim drafting which appellant here seeks to correct by securing a broader claim which properly belonged in the application which resulted in the patent.

Appellant's position, in summary, is that the claims of the patent and the appealed claims define two separately patentable inventions. He explains that the patent claims define a very specific process while the appealed claim defines a product per se. He does not deny that the process of the patent claims may produce a product defined by the appealed claims. He argues, however, that the product claim is broad enough to include products made by other processes as well. Essentially it is appellant's position that the appealed claim covers a product defined by certain physical characteristics and which may be made by other processes while the patent claims define a specific process that includes steps which are an improvement on the process and which may make the product defined by the appealed claim.

As we see it, the process referred to as an aid in defining the product in the appealed claim, is a much broader process than that claimed in the patent. The process recited in the appealed claim calls for centrifuging an acid dispersion of collagen fibers to form a film and until the dispersing liquid has been substantially removed. The claims to the patented process recite many more specific steps. The product resulting from the patented process may or may not be a

product such as that defined in the appealed claim.

From the facts of record, we think it clear that appellant has made and claimed two patentable inventions. The solicitor does not dispute that prior to appellant's inventions several problems remained unsolved in this art. These problems concerned both the product and processes for making the product. The appealed claim defines a product which has the following characteristics: (1) collagen film of uniform thickness; (2) substantial orientation of collagen fibers in a single direction; (3) at least about 1.6 times greater tensile strength in the direction of orientation as compared to tensile strength normal to the direction of orientation. The product is further defined by reciting as a process step that of centrifuging the starting product of an acid dispersion of collagen fibers until the dispersing fluid is substantially removed.

The patented process, however, includes additional process steps such as precasting a base of meltable wax to form a smooth solid film forming surface which is concentric with the axis of rotation; spin casting a thin layer of dilute aqueous regenerable collagen mass on the wax base; evaporating the water to form a film; and cutting a helix through the thus formed film.

Were the process claims of the patent identical with the process step recited in the appealed claim, a closer question might have been presented. We note, however, in this respect that in this art it appears to have been a past practice of the Patent Office to require restriction under Rule 142 between claims defining collagen films and claims defining a process for centrifugally casting a film.

 The appealed claim defines a product wherein oriented collagen fibers having a preferred tensile strength are produced in a collagen film of uniform thickness. The patented claims define a process in which the collagen solution is subjected to spin casting on a precast wax base and helical cutting the film to pro-

duce a collagen film of uniform cross-section. While the patented process may produce a product which falls within the claim to a product as defined in the appealed claim, this does not require the conclusion that double patenting exists.

As we find a second patentable invention to be defined by the appealed claim, the decision of the board is reversed.

Reversed.