SCHALL, Circuit Judge,
concurring-in-part and dissenting-in-part.
I agree with the majority that, in arguing against the claim of obviousness-type double patenting in the reexamination proceeding, Takeda should not be able to rely on the disclosures of the Gerlach and Mon-guzzi patents. However, I respectfully part company with the majority in its conclusion that Takeda should be able to rely on developments in the art up to January 8, 1990, the date of the filing of the '216 process patent application. In my view, in arguing against the claim of obviousness-type double patenting, Takeda should not be able to rely on disclosures after the December 19, 1974 invention date.[1] I believe that tying the inquiry to the invention date is most commensurate with patent law as a whole and the policy goals relating to obviousness-type double patenting.
First, it seems to me that the date of invention is most appropriate because it comports with current patentability doctrines, and, as I explain later, I view product-process obviousness-type double patenting as a patentability doctrine. See, e.g., 35 U.S.C. § 102(a) (“A person shall be entitled to a patent unless ... the invention was known or used by others in this *1379 country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent.” (emphasis added)); 35 U.S.C. § 102(e) (“A person shall be entitled to a patent unless ... the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent .... ” (emphases added)); Apotex Corp. v. Merck & Co., 507 F.3d 1357, 1359 (Fed.Cir.2007) (“35 U.S.C. § 102(g) provides that an applicant is not entitled to a patent if ‘before such person’s invention thereof, the invention was made in this country by another, who had not abandoned, suppressed, or concealed it.’ ” (quoting 35 U.S.C. § 102(g)) (emphasis added)); In re Translogic Tech., Inc., 504 F.3d 1249, 1259 (Fed.Cir.2007) (“An invention is unpatentable as obvious if the differences between the patented subject matter and the prior art would have been obvious at the time of invention to a person of ordinary skill in the art.” (emphasis added)); cf. Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed.Cir.2005) (en banc) (“We have made clear ... that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, 1.e., as of the effective filing date of the patent application.” (emphasis added)); Plant Genetic Sys., N.V. v. DeKalb Genetics Corp., 315 F.3d 1335, 1339 (Fed.Cir.2003) (“Enablement is determined as of the effective filing date of the patent.” (emphasis added)).
Second, we have previously emphasized the invention date with respect to obviousness-type double patenting:
The public should ... be able to act on the assumption that upon the expiration of the patent it will be free to use not only the invention claimed in the patent but also modifications or variants which would have been obvious to those of ordinary skill in the art at the time the invention was made, taking into account the skill of the art and prior art other than the invention claimed in the issued patent.
In re Longi, 759 F.2d 887, 893 (Fed.Cir.1985) (emphases from original omitted, emphasis added). Pertinent to this case, I view product-process obviousness-type double patenting as a patentability doctrine. At the date of invention, if only one process exists to make the product, the two are “substantially co-extensive.” See PTO’s Br. 17. To allow two patents to issue at that time would essentially run afoul of 35 U.S.C. § 101, as the applicant would be receiving two patents on one invention.[2] See, e.g., In re Vogel, 57 C.C.P.A. 920, 422 F.2d 438, 441 (1970); In re Ockert, 44 C.C.P.A. 1024, 245 F.2d 467, 469 (1957).
In a difficult case, the majority settles upon what I would characterize as a not-unreasonable attempt at compromise. Rejecting the approaches of both Takeda and the government, it holds that “the relevant time frame for determining whether a product and process are ‘patentably distinct’ should be at the filing date of the [’216 process patent application].” It thus concludes, in the setting of a pre-1995 filing, that art developed after a product/process invention date, but before a subsequent process patent application fil *1380 ing date, can render a previously unpat-entable process patentable. Through its approach, the majority concludes it is preventing the patentee from having the best of both worlds, whereby “the applicant can use the filing date as a shield, enjoying the earlier priority date in order to avoid prior art, and rely on later-developed alternative processes as a sword to defeat double patenting.” Maj. op. at 1376-77. However, while the majority’s approach is more restrictive than that urged by Takeda, it still allows Takeda to exclude sixteen years of prior art for invalidity purposes (such as 35 U.S.C. §§ 102, 103), while simultaneously taking advantage of that art to overcome a double-patenting rejection. This is what troubles me about the majority’s understandable desire to find a middle ground in this case. It allows Takeda to have it both ways. In addition, as far as I can tell, there is no other doctrine or rule that allows unpatentable material to spring back into patentability based on later developments in the field.
As correctly stated by the majority, “ ‘[t]he fundamental reason for the rule [of obviousness-type double patenting] is to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about.’ ” Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 967-68 (Fed.Cir.2001) (quoting In re Van Ornum, 686 F.2d 937, 943-44 (CCPA 1982)) (alterations in original). The majority’s approach, it seems to me, allows for such an extension. The product and the unpatentable process should both have entered into the public domain in 1998, when the '606 patent expired. At that point, members of the public should have been able to make the cephem compounds without paying royalties to Takeda or to another company. However, Takeda’s rights in the '216 process patent will not expire until 2013— almost forty years after its process was first disclosed. In my view, this is an “unjustified timewise extension” of the right to exclude. Although the cephem compounds are in the public domain, no currently unpatented method exists for making them.
I am also concerned that the majority’s approach could, in certain cases, result in the upsetting of reasonable expectations as to what is in the public domain. For example, let us assume we are in the seventeen-year regime, as we are in this case. Takeda is granted a product patent in year one. At that time, only one process exists (Process A). That process is disclosed, but not claimed, in the patent. In year eighteen, the product patent expires, putting Process A fully into the public domain. In addition, during the seventeen-year patent term, no other process has been developed, and thus Process A remains unpatentable separately because it is coextensive with the product patent. See In re Taylor, 53 C.C.P.A. 1187, 360 F.2d 232, 234 (1966); In re Cady, 22 C.C.P.A. 1190, 77 F.2d 106, 109 (1935) (“[Djouble patenting is not sustainable when the product can be fabricated by processes other than that secured by the issued process patent.”). Then, in year nineteen, a second process, called Process B, is invented for making the patented product. The initial inventor then files a patent application on Process A (assume proper co-pendency with the product patent), triggering double-patenting concerns. According to the majority’s approach, this second process would cause Process A to become patentable, despite the fact that Process A and the resulting product were in the public domain for one year. It seems to me such a result runs counter to public expectation and patent law’s public notice function.
Finally, the majority sets forth various questions which it says counsel toward its approach:
[A]dopting the PTO’s approach of the “date of invention” is only appealing at *1381 first glance. It appears to provide a bright-line test that conforms to the perspective used in other patentability determinations. But as Takeda points out in its brief, the “date of invention” raises other substantive questions such as: is the filing date the presumptive “date of invention”? If so, what is the date of invention, the domestic or foreign filing date? If foreign, must a claim have been “perfected” under § 119(e) with the filing of a certified copy of the original foreign application and an English language translation? What if the priority application contains support for some but not all of the patent claims? Would some of the claims be judged as of different cutoff dates? What if the inventor swears behind a reference?
Maj. op. at 1376-77.
I do not share the majority’s concern. I think we must keep in mind these kinds of questions are faced regularly and have been manageable. For example, interference proceedings provide a parallel to double-patenting: a court (or the Board of Patent Appeals and Interferences) must look to the date of invention while evaluating two competing applications. That additional questions may have to be addressed if the approach urged by the government is adopted does not mean that we should ignore that approach if we feel it is correct.
It may be that the new patent term will cure many of the concerns enumerated in this opinion. However, that does not mean that we should ignore those concerns. Obviousness-type double patenting is a judicially created doctrine, and using the date of invention best comports with our previously stated policy goals underlying the doctrine. For the foregoing reasons, I respectfully dissent from the majority’s decision allowing Takeda to use developments in the art that post-date the date of invention in arguing against the obviousness-type double patenting rejection.

. The PTO and Takeda used this date as the “presumed date of invention” in briefing and argument, so I will use it here as well.

. Although this view is admittedly overly simplistic, tracing the product-process double patenting doctrine back to its § 101 origins serves to bolster the connection between the doctrine and other questions of patentability.